IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

_____

| | |
|---|---|
| ANTHONY WOODS, S. MADELINE SHADD, CARMON Y. SMITH, TAMARIA SANDERS, SASSAH HENRY, AND MARCIA BAKER On behalf of THEMSELVES and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RHA/TENNESSEE GROUP HOMES, INC. d/b/a STONES RIVER CENTER<br><br>Defendant. | Civil Action No. 3:11-cv-0044<br><br><br><br>JUDGE ALETA A. TRAUGER |

_____

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**
_____

Defendant, RHA/Tennessee Group Homes, Inc. ("Defendant"), responds in opposition to Plaintiff's Motion for Temporary Restraining Order. Defendant respectfully submits that, contrary to Plaintiff's unsupported assertions, it did nothing improper in communicating with its employees in a manner requested by the U.S. Department of Labor. Therefore, the extraordinary injunctive relief requested by Plaintiffs is unwarranted and inappropriate.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Six named Plaintiffs, all current and former employees of Defendant, initiated this action on January 13, 2011, on behalf of themselves and those purportedly similarly situated. Plaintiffs assert claims under the Fair Labor Standards Act, 29 U.S. C. § 201, *et. seq.* ("FLSA") challenging the method by which their wages were calculated to reflect their break periods.

Since filing suit, eighty (80) individuals have opted into this action by filing consents to become plaintiffs.

On or about February 1, 2011, the U.S. Department of Labor Wage and Hour Division ("DOL") notified Defendants that it was conducting a wage and hour investigation. The DOL's investigation focused on the same issues raised by Plaintiffs in this lawsuit. Upon conclusion of its investigation in March 2010, the DOL concluded that Stones River Center owed its employees certain amounts of back pay, which were calculated by the DOL. Early in the investigation, the DOL indicated that if Stones River Center did not enter into a settlement, then the case would be referred to the solicitor's office with the implied threat of litigation. Despite the fact that Defendant disagreed with the DOL's determination that it owed back pay to any employees, Defendant decided to comply with the DOL's determination, rather than opening a second front in this litigation against a federal agency with limitless resources.

In order to effectuate its settlement of the claims raised by the DOL, Defendant was instructed to provide each of its employees who were not plaintiffs in this lawsuit with a Form WH-58. Pursuant to the DOL's instructions, Defendants did so, and now Plaintiffs take issue with Defendant's compliance with instructions from the DOL.

Discovery has not yet begun in this case. The Initial Case Management Conference has not yet occurred. No class has been certified, conditionally or otherwise. No Motion for Conditional Certification was filed prior to Plaintiffs' Motion for Temporary Restraining Order. There currently are no class members in this case; only putative class members.

## II. LEGAL STANDARD

Plaintiffs incorrectly assume that Fed. R. Civ. P. 65 applies to the issue that they have brought before the court in their Motion for Temporary Restraining Order. However, Plaintiffs

make a logical leap into a Rule 65 analysis, without first establishing that injunctive relief is the appropriate redress for the issues they raise, even if Plaintiffs were entitled to relief, which they are not.

In Plaintiff's Amended Complaint, there is no request for injunctive relief to prevent Defendant from communicating with non-plaintiffs regarding a Department of Labor settlement. Accordingly, Plaintiffs seek through their Motion for Temporary Restraining Order extraordinary injunctive relief that has not been requested in the underlying lawsuit. Defendants understand that the Court has the inherent authority to control the notice process in a collective action under the FLSA. *Hoffman La Roche Inc. v. Sperling*, 493 U.S. 165 (1989). However, the Court's inherent authority to control the notice process in this case, does not give rise to an independent claim for injunctive relief that has not been pleaded in the Amended Complaint.[1] However, as set forth below, even indulging the Rule 65 standard for the purposes of argument, Plaintiffs fail to meet their burden of establishing the necessary proof to warrant a temporary restraining order.

## III. ANALYSIS

As the Court is well aware, the factors to be considered in determining a temporary restraining order or preliminary injunctive relief are: (a) whether the movant has shown a strong or substantial likelihood or probability of success on the merits; (b) whether the movant has shown irreparable injury; (c) whether the preliminary injunction could harm third parties; and (d) whether the public interest would be served by issuing the preliminary injunction. *Solis v.*

---

[1] Even the cases that Plaintiff relies upon to support its argument do not involve injunctive relief under Fed. R. Civ. P. 65. *See Ojieda-Sanchez, et. al. v. Bland Farms,* 600 F. Supp. 2d 1373 (S.D. Ga. 2009) (ordering a protective order to limit defendant's communications with plaintiffs and potential opt-in plaintiffs); *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664 (E.D. Tex. 2003) (same).

*Tennessee Commerce Bancorp, Inc.*, 713 F. Supp. 2d 701, 716 (M.D. Tenn. 2010). None of these factors favor a temporary restraining order in this case.

   A.   **Plaintiffs Are Not Likely to Succeed on the Merits.**

Plaintiffs are unlikely to succeed on the merits of their argument that Defendant should be restricted from communicating with non-parties because Defendants communications are a legitimate attempt to effectuate a settlement with the DOL, and none of Defendants communications have been misleading or coercive. Even the cases relied upon by Plaintiffs only support an argument to restrict contact with potential plaintiffs where the communications at issue are "coercive," "misleading," or are "an attempt to undermine" the collective action. *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 668 (E.D. Tex. 2003) ("the Court first determines whether Defendants' speech is misleading, coercive, or an attempt to undermine the collective action.").

None of Defendant's contacts with its employees rise to the level of coercive, misleading, or an attempt to undermine this action. Instead, Defendant was engaging in legitimate communications to effectuate a settlement required by the DOL. In 1949, Congress amended the FLSA to provide the Secretary of Labor with authority to obtain back wages for employees. Section 16(c) of the statute states:

> The Secretary [of Labor] is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages.

29 U.S.C. §216(c). As the 5th U.S. Circuit Court of Appeals noted in *Sneed v. Sneed's Shipbuilding, Inc.*, 545 F.2d 537, 539 (1977), this provision was added to provide an incentive to

employers to accept settlements supervised by Wage-Hour by adding certainty that the employee with whom the employer settled would not later bring suit against the employer.

Furthermore, 29 CFR § 516.2(b)(2) provides that employers "*shall*" deliver a copy of the WH-58 form to the employee to effectuate a settlement with the DOL. Moreover, the DOL's Back Wage Disbursement and Pay Evidence Instructions, specifically instruct Defendant to return signed WH-58 forms to the Department of Labor. In order for Defendant to obtain these forms, it necessarily had to communicate with its employees. Thus, Defendant did nothing improper.

Plaintiffs principally rely on two district court cases to support their argument, both of which are easily distinguishable based on their facts. First, Plaintiffs rely on *Sanchez, et. al. v. Bland Farms,* 600 F. Supp. 2d 1373 (S.D. Ga. 2009). In *Sanchez*, while a motion for conditional certification was pending, Defendant sent two emissaries to personally visit Plaintiffs at their homes in Mexico. The company representatives allegedly told the Plaintiffs that the Plaintiffs' attorneys would steal their identity and that their participation in the lawsuit would keep them from working for the employer again. Even the contradictory declarations submitted in support of the instant motion do not establish any similar facts that would show coercion on the part of Defendant in this case. Defendants in this case are not alleged to have traveled out of country to the Plaintiffs' homes and made threatening statements. Instead, the Defendants in this case had legitimate discussions about a pending settlement with the DOL with its employees who it did not believe to be Plaintiffs in this case. Additionally, there was no motion for conditional certification pending at the time of the communications in this case, as there was in *Sanchez*.

Plaintiffs also misplace reliance on *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664 (E.D. Tex. 2003). In *Belt*, Defendant unilaterally mailed letters to members of a class that had already been

conditionally certified, wherein the Defendant allegedly compared the suit to a medical malpractice suit and threatened the potential plaintiffs' jobs. There is no certified class in the instant case, as there was in *Belt*. There is no allegation of coercive statements by the Defendant in this case. The record clearly reflects that the Defendant in this case was attempting to effectuate a settlement with the DOL, rather than trying to convince potential Plaintiffs not to opt into the lawsuit, as was the case in *Belt*.

Contrary to Plaintiff's misplaced reliance on *Belt* and *Sanchez*, the case of *Rose v Consolidated Elect. Distrib.*, 816 F. Supp 489 (N.D. Ill. 1993) is exactly on point. In *Rose*, the Plaintiff's sought an injunction to prohibit both Defendants and the DOL from contacting potential Plaintiffs to effectuate a settlement. The Court denied the injunction, reasoning that:

> plaintiff is asking this court to restrain precisely what the applicable statute says the Secretary is authorized to do, "supervise the payment of the unpaid minimum wages or the unpaid compensation owing to any employee or employees under section 206 or section 207," because he does not like the statutory consequence that "the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) ... to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages." 29 U.S.C.A. § 216(c) (West 1992 Supp.). The statute provides an incentive for employers to pay what they owe their employees under the supervision of the Secretary, that incentive being avoidance of additional liability to which the employer would be subject if sued by the Secretary or individual employees. The statute also gives the employees a choice; they may take the money immediately and forego their rights to additional damages, or they may forego the immediate money and pursue their rights to additional damages. From the motion for preliminary injunction, it is apparent that the statute is being followed in this case and that this is precisely what plaintiff seeks to prevent.

*Id.* at 490.

### B. Plaintiffs Have Not Shown Irreparable Harm.

Plaintiffs incorrectly argue that they will be irreparably harmed because Defendant's communications will allegedly "confuse and coerce Plaintiffs into withdrawing from this litigation and functionally settling their claims outside of the court's supervision and without the

Court's approval, in violation of the FLSA's court approval requirement." However, as discussed above, the FLSA expressly authorizes the Secretary of Labor to supervise the settlement process, which is exactly what is happening here. Plaintiffs cannot argue that a process that is specifically authorized by Congress in the FLSA causes irreparable harm.

Moreover, Plaintiffs imply that they are irreparably harmed because by "improper communications" and they rely upon Tennessee Rule of Professional conduct 4.2. Of course, Tenn. R. Prof. Conduct 4.2 applies to attorneys communicating with represented parties. Here, the Defendant's representatives are not attorneys, and there is no allegation that they were instructed by attorneys to communicate with represented parties. Thus, Rule 4.2 is not even applicable, much less the basis for establishing irreparable harm.

**C.     A Temporary Restraining Order Could Harm Third Parties.**

Plaintiffs incorrectly argue that the alleged harm caused by Defendants communications with potential plaintiffs outweighs the harm to Defendant by the proposed injunctive relief. In support of its position, Plaintiffs rely on a GAO report and a *New York Times* article, neither of which are legal authority, for the proposition that claimants are underpaid in DOL settlements. However, these secondary resources do not support the proposition for which they are cited. At best, they establish that some Plaintiffs are unable to obtain relief through the DOL. However, the recipients of the DOL settlement in this case *have* achieved relief through the DOL process.

Moreover, there is no authority for Plaintiff's suggestion that the DOL should defer processing its settlement until after this Court proceeds in this case. There is no authority that prevents the DOL from proceeding with its settlement, and contrary to Plaintiffs' arguments, the entire purpose of authorizing the DOL to facilitate and supervise settlements is to avoid protracted litigation; which is apparently Plaintiff's unstated goal.

### D. A Temporary Restraining Order Is Not in the Public Interest.

Plaintiff argues that it is in the public interest to enforce the FLSA. However, Plaintiffs do not explain how it is against the public's interest for the FLSA to be effectuated through a settlement with the DOL, which is expressly authorized by the FLSA. Additionally, Plaintiff does not explain how this court would be prevented from effectuating the goals of the FLSA, in the event that some potential members of the currently non-existent class enter into a DOL-sanctioned settlement under the FLSA.

### III. CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiffs' Motion for Temporary Restraining Order.

Respectfully submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC


 /s/ Ben H. Bodzy
Edward R. Young  BPR No. 8373
First Tennessee Building
165 Madison Avenue
Telephone: (901) 577-2215
Facsimile: (901) 577-4222
rwilliams@bakerdonelson.com
eyoung@bakerdonelson.com

and

Emily H. Plotkin BPR No. 22978
Ben H. Bodzy BPR No. 23517
Baker Donelson Center
211 Commerce Street, Suite 800
Nashville, TN  37201
Telephone: (615) 726-5600
Facsimile: (615) 726-0464
E-Mail: eplotkin@bakerdonelson.com
E-Mail: bbodzy@bakerdonelson.com

*Attorneys for Defendant RHA/Tennessee Group Homes d/b/a/ Stones River Center*

## CERTIFICATE OF SERVICE

   I hereby certify that on April 14, 2011 a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to counsel of record listed below:

**George Edward Barrett**
**David W. Garrison**
**Scott P. Tift**
Barrett Johnston, LLC
217 Second Avenue, N
Nashville, TN 37201
(615) 244-2202
Email: gbarrett@barrettjohnston.com
   dgarrison@barrettjohnston.com
   stift@barrettjohnston.com

               /s/ Ben H. Bodzy
               Edward R. Young