# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| ANTHONY WOODS, S. MADELINE SHADD, **)** | |
| CARMON Y. SMITH, TAMARIA SANDERS, **)** | |
| SASSAH HENRY, and MARCIA BAKERS, **)** | |
| on behalf of themselves and all others similarly **)** | |
| situated, **)** | |
| **)** | |
|     Plaintiffs, **)** | |
| **)** | |
| v. **)** | **Case No. 3:11-cv-00044** |
| **)** | **Judge Trauger** |
| RHA/TENNESSEE GROUP HOMES, INC. **)** | |
| d/b/a STONES RIVER CENTER, **)** | |
| **)** | |
|     Defendant. **)** | |

## MEMORANDUM

Pending before the court are several motions: (1) a Motion for Conditional Certification of a Collective Action filed by the plaintiffs (Docket No. 47), to which the defendant has filed a response (Docket No. 77), and in support of which the plaintiffs have filed a reply (Docket No. 85); (2) a Motion to Reconsider the Court's April 14, 2011 Order filed by the defendant (Docket No. 74), to which the plaintiffs have filed a response (Docket No. 86); and (3) a Motion to Permit Late-Filed Claims filed by the plaintiffs (Docket No. 118). For the reasons discussed below, the plaintiffs' motions will be granted, and the defendant's motion will be granted in part and denied in part.

## FACTS

The defendant, RHA/Tennessee Group Homes, Inc. d/b/a Stones River Center ("Stones River"), runs a 24-hour care facility in Murfreesboro, Tennessee for patients who are

1

developmentally disabled.[1]  This case involves the defendant's policy of automatically deducting a 30-minute meal period from its employees' hours for each shift (the "Meal Break Deduction Policy").  The plaintiffs allege that this policy violated the Fair Labor Standards Act ("FLSA" or the "Act"), 29 U.S.C. § 201 *et seq.*, because they were required to work through their supposed meal breaks.

The plaintiffs have submitted declarations from six caretaker employees.  Each declaration states that, even though Stones River deducted 30 minutes from each shift, the employee was usually unable to take a meal break.  (*E.g.*, Docket No. 48, Ex. 2 at 2-3.)  The employees were responsible for patient care, and, "if [they tried] to eat a meal, [they] still [had] to maintain the care of the patients, tending to their every need, including cleaning them, changing their diapers, and ensuring their safety."  (*Id.* at 3.)  In early April 2011, Stones River changed the Meal Break Deduction Policy; shifts were reduced from 8.5 to 8 hours, and the defendant stopped deducting meal time.

The six named plaintiffs filed this putative collective action on January 13, 2011.  Coincidentally, on the same day, the Department of Labor ("DOL") contacted the defendant and commenced an investigation regarding the Meal Break Deduction Policy.  (Docket No. 80 at 25 (transcript of April 14, 2011 hearing).)  The DOL was apparently following up on a complaint that it had received nearly a year earlier.  (*Id.* at 32.)  Several days later, on January 18, the defendant informed the DOL of the pending private lawsuit.

_____

[1] Unless otherwise noted, the facts are drawn from the parties' submissions and from the April 14, 2011 hearing on the plaintiff's Motion for Temporary Restraining Order and for Preliminary Injunction.

Nevertheless, the DOL proceeded with the investigation and, in early March 2011, the DOL and the defendant reached a settlement, pursuant to 29 U.S.C. § 216(c). Under the settlement, the defendant agreed to comply with the FLSA in the future and to pay a certain amount of back wages to employees who were subject to the Meal Break Deduction Policy. (*See* Docket No. 80 at 14.)

To distribute these payments, the defendant posted the following notice in a common area:

> The following employees must come to the Administrative Building and see Michelle regarding payment for wages as agreed upon by the Stones River center and the Department of Labor on Tuesday, April 12, 2011, 8:00 am - 4:00 pm.
>
> If you have questions, see Lisa or Kamilla

(Docket No. 43, Ex. 1 at 72; Docket No. 56, Ex. 1.) The posting contained a list of over 60 employees (*see* Docket No. 56, Ex. 1), including several employees who had already opted into this lawsuit (*see, e.g.*, Docket No. 43, Ex. 1 at 56), although the defendant claims that their inclusion was an oversight. In her declaration, Human Resources Director Kamilla Wright states that she was simply "instructed to post a list of employees for whom checks were available." (Docket No. 55 ¶ 7.)

Wright was further instructed "that when an employee came to the office to pick up their check, [she] was to have them sign the receipt for payment of back wages and then give them their check." (*Id.* ¶ 9.) The declaration of Lisa Izzi, the defendant's administrator, states that Izzi received identical instructions. (Docket No. 56 ¶ 9.) Accordingly, at the meetings with employees, each employee was given a check and DOL Form WH-58, which was titled "Receipt

for Payment of Back Wages, Employment Benefits, or Other Compensation."  (Docket No. 43, Ex. 1 at 13.)  The form stated:

> I, [employee name], have received payment of wages, employment benefits, or other compensation due to me from Stones River Center . . . for the period beginning with the workweek ending [date] through the workweek ending [date.]  The amount of payment I received is shown below.
>
> This payment of wages and other compensation was calculated or approved by the Wage and Hour Division and is based on the findings of a Wage and Hour investigation.  This payment is required by the Act(s) indicated below in the marked box(es):
>
> [X] Fair Labor Standards Act[1] . . .

(*Id.*)  Further down, in the middle of the page, the form contained the following "footnote":

> [1]NOTICE TO EMPLOYEE UNDER THE FAIR LABOR STANDARDS ACT (FLSA) – Your acceptance of this payment of wages and other compensation due under the FLSA based on the findings of the Wage and Hour Division means that you have given up the right you have to bring suit on your own behalf for the payment of such unpaid minimum wages or unpaid overtime compensation for the period of time indicated above and an equal amount in liquidated damages, plus attorney's fees and court costs under Section 16(b) of the FLSA.  Generally, a 2-year statute of limitations applies to the recovery of back wages.  Do not sign this receipt unless you have actually received this payment in the amount indicated above of the wages and other compensation due you.

(*Id.*)  Below that was an area for the employee to sign and date the form.

It appears that Wright and Izzi did not, as a matter of course, inform the employees that accepting the money and signing the WH-58 form was optional.  Nor did they inform the employees that a private lawsuit covering the same alleged violations was already pending.

On April 12 and 13, 2011, a number of employees accepted the payments and signed the

WH-58 forms. On April 13, the plaintiffs' counsel learned of this and filed a motion for a temporary restraining order or preliminary injunction, seeking to prevent the defendant from communicating with opt-in plaintiffs and potential opt-in plaintiffs. (Docket No. 43.)

The court held a hearing on the plaintiffs' motion on April 14, 2011. At that hearing, the court expressed its displeasure with the defendant's actions, which, the court surmised, were at least partly calculated to prevent potential class members from opting in to this litigation. The court stated that it would declare the WH-58 forms (and the attendant waiver of those employees' right to pursue private claims) to be null and void; thus, those employees would be free to opt in to this lawsuit. The court also stated that the settlement payments would act as an offset against any damages recovered in this suit. The court found that notice of this suit should be sent to all hourly employees who were subject to the Meal Break Deduction Policy during the relevant time period, although the court reserved decision on whether to conditionally certify the collective action. The court determined that the DOL, as opposed to the parties, should draft a separate notice informing the employees of the voidance of the WH-58 forms.

Later on April 14, the court entered an Order: (1) requiring the defendant to provide to plaintiffs' counsel, by April 22, 2011, names and addresses of hourly employees who were subject to the Meal Break Deduction Policy; (2) requiring the parties to submit, by April 22, a proposed agreed form of notice to be sent to potential class members; and (3) declaring any form WH-58 waivers signed by actual or potential opt-in plaintiffs to be null and void. (Docket No. 60 at 1-2.) The next day, the court entered a preliminary injunction preventing the defendant from: (1) communicating with opt-in plaintiffs concerning the lawsuit or unpaid wages, until

further order of the court; and (2) communicating with potential opt-in plaintiffs concerning the same subject matter until the end of the opt-in period.  (Docket No. 61.)

On April 25, 2011, the parties submitted an agreed notice of this lawsuit (Docket No. 66), which the court approved on April 26 (Docket No. 72).  The agreed notice attached a separate notice from the DOL on DOL letterhead,[2] which stated:

> Due to confusion generated during an effort to resolve certain wage claims involving the above business, those receiving this Notice will be given a new opportunity to choose whether to join the lawsuit filed in the Middle District of Tennessee concerning these claims.  If you receive this notice, you still have the opportunity to bring suit on your own behalf . . . .  You still have this opportunity even if you earlier signed a Department of Labor Form WH-58 Receipt for Payment of Back Wages distributed by the above business and you accepted and/or cashed a check in conjunction therewith.  If you received a check and signed the WH-58 Form, you may accept the amount you received in satisfaction of your claim for the period noted on the form or you may also choose to join the lawsuit during the period permitted by the court for you to join.  If you received a check you will not have to return the check or its proceeds if you join the suit but the amount you received may be considered in determining a future additional award, if any, by the court.

(Docket No. 66, Ex. 2.)  Pursuant to the court's Order (Docket No. 72), the agreed notice and the DOL notice were mailed to putative class members on May 5, 2011 (Docket No. 81, Ex. 1).  The notice instructed the putative class members to return their opt-in forms by June 20, 2011 if they wished to join the suit.

The plaintiffs have filed a Motion for Conditional Certification of a Collective Action,

_____

[2] Although the parties agreed on the content of the notice of this lawsuit, the defendant objected to the inclusion of the separate DOL notice.  (Docket No. 66 at 1-2.)

pursuant to 29 U.S.C. § 216(b), seeking certification of a conditional class consisting of the defendant's "current and former hourly wage employees who work or worked at Stones River Center's facility in Murfreesboro, Tennessee at any time since January 13, 2008 for whom Stones River Center automatically deducted 30 minutes per shift when determining hours worked." (Docket No. 85 at 1.) The plaintiff has also filed a Motion to Permit Late-Filed Claims, and the defendant has filed a Motion to Reconsider regarding the court's April 14, 2011 Order.

<u>ANALYSIS</u>

## I.      FLSA Certification Standard

The FLSA provides that a collective action "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Because the statute only requires that employees be "similarly situated," plaintiffs seeking to certify a collective action under the FLSA face a lower burden than those seeking to certify a class action under Federal Rule of Civil Procedure 23. *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 584 (6th Cir. 2009). Once a collective action is certified, employees seeking to join the class must affirmatively opt in to the litigation by filing a written consent with the court. 29 U.S.C. § 216(b).

The FLSA does not define the term "similarly situated." The Sixth Circuit has noted that courts have considered "the 'factual and employment settings of the individual[] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action.'" *O'Brien*, 575

F.3d at 584 (quoting 7B Wright, Miller, & Kane, *Federal Practice and Procedure* § 1807 at 497 n.65 (3d ed. 2005)) (alterations in original). "[I]t is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Id.* at 585. But employees may also be similarly situated if their claims are merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* Indeed, "[s]howing a 'unified policy' of violations is not required [for certification]." *Id.* at 584. In *O'Brien*, the Sixth Circuit stated that even a requirement that employees' "causes of action under the FLSA accrued at about the time and place in the approximate manner of the named plaintiff" would be "more demanding than what the [FLSA] requires." *Id.* at 585.

Typically, courts employ a two-phase inquiry to address whether the named plaintiffs are similarly situated to the employees they seek to represent. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006); *O'Brien*, 575 F.3d at 583. "The first [phase] takes place at the beginning of discovery. The second occurs after all of the opt-in forms have been received and discovery has concluded." *Comer*, 454 F.3d at 546 (quotation marks omitted).

At the first stage, the plaintiff bears the burden of showing that employees in the class are similarly situated. At that point, "'the certification is conditional and by no means final,'" and the plaintiff "must show only that 'his position is similar, not identical, to the positions held by the putative class members.'" *Comer*, 454 F.3d at 546-47 (quoting *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)). In *Comer*, the Sixth Circuit approvingly

quoted the lower court's decision, which stated that conditional certification "'need only be based on a modest factual showing,'" *id.* at 547 (quoting *Pritchard*, 210 F.R.D. at 596), and that the court should use "'a fairly lenient standard [that] typically results in . . . certification,'" *id.* (quoting *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)); *see also Shabazz v. Asurion Ins. Serv.*, No. 3:07-0653, 2008 U.S. Dist. LEXIS 29696, at *7 (M.D. Tenn. Apr. 10, 2008) (stating that plaintiffs "must simply submit evidence establishing at least a colorable basis for their claim that a class of similarly situated plaintiffs exist[s]" (quotation marks omitted)). In a typical case, if the named plaintiffs show that employees in the proposed class are similarly situated, "[t]he district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit." *Comer*, 454 F.3d at 546.

After discovery, the defendant may move for decertification of the conditional class. *See O'Brien*, 575 F.3d at 583; *Shabazz*, 2008 U.S. Dist. LEXIS 29696, at *8 (citing *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007)). At this second stage, the court has access to more information and employs a "stricter standard" in deciding whether class members are, in fact, similarly situated. *Comer*, 454 F.3d at 547.

## II.    Conditional Certification

In light of the lenient standard for conditional certification, the court will conditionally certify a class consisting of the defendant's hourly employees at the Murfreesboro facility who were subject to the Meal Break Deduction Policy at any time since January 13, 2008.

The declarations submitted by the plaintiffs are sufficient to show that these employees were subject to a uniform policy – that is, that a 30-minute meal period was automatically

deducted from their hours, regardless of whether they had actually received a bona fide meal period. The declarations are also sufficient to show that the defendant repeatedly failed to ensure that its hourly employees received a bona fide meal period. In addition, it is important to note that, because of the unique circumstances of this case, notice of this lawsuit has already been sent to these employees, and dozens of putative class members have returned their opt-in forms.

In opposing conditional certification, the defendant makes three arguments. First, it argues that some of its hourly employees were not subject to the Meal Break Deduction Policy. (Docket No. 77 at 14-15.) It is clear, however, that the plaintiffs only seek to certify a class of employees who were subject to the policy. (*See, e.g.*, Docket No. 48 at 4; Docket No. 85 at 1.)

Second, the defendant argues that second- and third-shift caretaker employees should not be included in the class. (Docket No. 77 at 15-17.) This is because the plaintiffs' declarations primarily state that they were interrupted during their meals by the demands of patient care; according to the defendant, employees on second and third shifts are less likely to be interrupted because patients are sleeping. (*Id.*) But the fact that patients might sleep during those shifts is not enough to show, at this stage, that those employees are not similarly situated. In fact, the plaintiffs have submitted declarations from employees who worked on the second or third shift, and those declarations state that the employees rarely received a full 30-minute meal break. (*E.g.*, Docket No. 48, Ex. 2 at 2 (declaration of Martha Tucker, stating that she has "never had a meal period when [she] was working third shift").)

Third, the defendant argues that non-caretaker employees should be excluded from the class, because those employees were not interrupted during their meals by the demands of

patient care.  (Docket No. 77 at 11-14.)  Employees in positions such as maintenance assistant, receptionist, secretary, and clerical assistant were subject to the Meal Break Deduction Policy but had no responsibility for patient care.  (Docket No. 78 ¶¶ 10-12.)

The court is persuaded, however, that the plaintiffs have sustained their fairly lenient burden of showing that all employees who were subject to the Meal Break Deduction Policy were similarly situated.  The plaintiffs' unifying theory is that the defendant did not provide its employees with a bona fide 30-minute meal break, even though it automatically deducted 30 minutes from each shift.  Even if the proof offered by clerical employees regarding the type of work done during meal breaks ultimately differs from evidence offered by caretaker employees, that is not enough to defeat conditional certification.  *Frye v. Baptist Mem'l Hosp., Inc.*, No. 07-2708, 2008 U.S. Dist. LEXIS 107139, at *18-22 (W.D. Tenn. Sept. 16, 2008) (finding that all hospital employees subject to a meal break deduction policy were similarly situated for purposes of conditional certification); *see also O'Brien*, 575 F.3d at 585 (holding that employees may be similarly situated if their claims are merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct" and that the plaintiff is not required to show that employees' claims accrued "in the approximate manner of the named plaintiff").  Moreover, the defendant has not shown that these non-caretaker employees constitute a significant portion of the putative class.

In support of its argument, the defendant cites *Fengler v. Crouse Health Foundation, Inc.*, 595 F. Supp. 2d 189 (N.D.N.Y 2009), which addressed a factually similar situation involving a hospital's automatic meal break deduction policy.  In *Fengler*, the magistrate judge

refused to conditionally certify a class that included non-caretaker employees because those employees did not face the same patient-care demands as caretaker employees. *Id.* at 197. This court declines to follow *Fengler* for two reasons. First, that case is distinguishable from the instant case, because, in *Fengler*, notice of the suit had not already been sent to non-caretaker employees. Second, *Fengler*'s result departs from the Sixth Circuit's lenient approach to conditional certification; in fact, the magistrate judge in that case found it necessary to explicitly reject *Frye*, a Western District of Tennessee decision. *Id.* at 195-96. *Frye* conditionally certified a class of all hospital employees who were subject to an automatic meal break deduction even though "the individualized nature of some of Plaintiff's claims may raise valid concerns." *Frye*, 2008 U.S. Dist. LEXIS 107139, at \*22.

Here, as in *Frye*, the defendant is welcome to raise its arguments at the more demanding second phase of collective action certification. *See id.* For now, however, the court will conditionally certify a class of all hourly employees who have been subject to the Meal Break Deduction Policy since January 13, 2008.

## III.   Motion to Reconsider

The defendant has filed a Motion to Reconsider regarding the court's April 14, 2011 Order. Specifically, the defendant asks the court to reconsider two aspects of that Order: (1) the declaration that the § 216(c) waivers signed by the defendant's employees are null and void; and (2) the decision allowing opt-in plaintiffs who signed the waivers to retain their settlement payments. The defendant further argues that, if the court declines to reconsider these issues, the court should certify an interlocutory appeal.

Although the Federal Rules of Civil Procedure do not explicitly address motions to reconsider interlocutory orders, "[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. Appx. 949, 959 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)). District courts have "significant discretion" in deciding motions for reconsideration, and, "[t]raditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id.* (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)).

The main issue raised by the defendant is the validity of the waivers signed by employees who accepted the settlement payments. The FLSA, in addition to allowing employees to file collective actions against their employer, allows the DOL to investigate alleged violations of the Act and to supervise an employer's payment of back wages owed to its employees. 29 U.S.C. §§ 211, 216(c). Section 216(c) provides that "the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section [to bring suit against the employer]." *Id.* § 216(c).

Here, the DOL investigated the defendant, reached a settlement, and supervised offers of payment to the defendant's employees. A number of the defendant's employees received and cashed checks pursuant to that settlement. Those employees all signed DOL Form WH-58, which stated that the employee's "acceptance of this payment of wages" meant that he or she

"[has] given up the right . . . to bring suit on [his or her] own behalf for the payment of such unpaid minimum wages or unpaid overtime compensation . . . under Section 16(b) of the FLSA."

In its April 14, 2011 Order, however, the court stated that "[a]ny waivers signed by opt-in plaintiffs or potential opt-in plaintiffs on United States Department of Labor Form WH-58 [were] declared NULL and VOID."[3]  (Docket No. 60 at 2.)  During the April 14 hearing, the court explained that it found the defendant's settlement procedure to be coercive and misleading. The defendant argues that this finding was in error and that there is no legal basis for voiding the employees' waivers.  (Docket No. 75 at 5-9.)

In support, the defendant primarily cites *Sneed v. Sneed's Shipbuilding, Inc.*, 545 F.2d 537 (5th Cir. 1977).  In that case, the DOL investigated the defendant employer and determined that it owed the plaintiff employee $1,500 in unpaid overtime.  *Id.* at 538.  The employer submitted a check to the DOL, which in turn presented the check to the employee.  *Id.*  The employee took the check and signed a receipt, which contained waiver language similar to the language on the Form WH-58 in the instant case.  *Id.*  The *Sneed* employee later consulted with his lawyer, returned the check to the employer without cashing it, and filed a private action.  *Id.* The trial court held that the waiver was null and void for lack of consideration.  *Id.*

On appeal, the Fifth Circuit reversed and held that the employee had waived his right to file suit against the employer.  The court stated that, "[f]or there to be a valid waiver[,] section 216(c) simply requires (a) that the employee agree to accept the payment which the Secretary [of

_____

[3] The defendant claims that the court improperly raised the issue of the validity of the waivers *sua sponte*.  (Docket No. 75 at 2.)  This is incorrect.  At the April 14, 2011 hearing, the plaintiffs orally moved the court to invalidate the waivers.  (Docket No. 80 at 24.)

Labor] determines to be due and (b) that there be 'payment in full.'" *Id.* at 539. Thus, "[b]y signing the waiver statement acknowledging that he had agreed to accept the tendered payment and by taking the employer's check for the full amount, the employee . . . did in fact waive his right to sue under the statute."[4] *Id.* at 539-40 (footnote omitted). Significantly, the court specifically noted that the employee "never claimed that the release was obtained through fraud." *Id.* at 538.

Both *Sneed* and the plain language of § 216(c) make it clear that, in determining the validity of a waiver, the key inquiry is whether the employee "agreed" to accept the employer's payment in settlement of the employee's potential FLSA claims. The handful of other federal appellate decisions examining the validity of § 216(c) waivers are in accord. *Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1146 (9th Cir. 2007) (holding that a waiver form was only valid as to FLSA claims regarding the specific dates listed on the form); *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986) (holding that the mere act of cashing a check, with no acknowledgment of any waiver, does not constitute a waiver under § 216(c)).

One goal of § 216(c)'s waiver provision is to "create an incentive for employers voluntarily to accept settlements supervised by the [DOL's] Wage and Hour Division." *Sneed*, 545 F.2d at 539. More generally, however, § 216 "was designed to offer a choice to an employee who had been improperly denied wages under the FLSA: he or she might choose between [(1)] action by the Administrator under . . . subsection (c) for simply the amount which

---

[4] The Fifth Circuit rejected the argument that there is not "payment in full" until the check is cashed. *Sneed*, 545 F.2d at 539 n.6.

is owed to him and [(2)] his own individual right of action under subsection (b) for both back wages and liquidated damages together with a reasonable attorney's fee." *Dent*, 502 F.3d at 1145 (quotation marks omitted).

To constitute a waiver, the employee's choice to waive his or her right to file private claims – that is, the employee's agreement to accept a settlement payment – must be informed and meaningful. In *Dent*, the Ninth Circuit explicitly equated "valid waiver" with "meaningful agreement." *Dent*, 502 F.3d at 1146. Thus, the court stated that "an employee does not waive his right under section 16(c) to bring a section 16(b) action unless he or she agrees to do so after being fully informed of the consequences." *Id.* (quotation marks omitted). In *Walton*, the Seventh Circuit likened a valid § 216(c) waiver to a typical settlement between private parties:

> When private disputes are compromised, the people memorialize their compromise in an agreement. This agreement (the accord), followed by the payment (the satisfaction), bars further litigation. Payment of money is not enough to prevent litigation. . . . There must also be a release.

*Walton*, 786 F.2d at 306. The relevant inquiry is whether the plaintiffs "meant to settle their [FLSA] claims." *Id.*

Taken together, *Sneed*, *Walton*, and *Dent* suggest that an employee's agreement to accept payment and waive his or her FLSA claims is invalid if the employer procured that agreement by fraud or duress. As with the settlement of any other private dispute, fraud or duress renders any "agreement" by the employee illusory. *See* 17A Am. Jur. 2d *Contracts* § 214 ("One who has been fraudulently induced to enter into a contract may rescind the contract and recover the benefits that he or she has conferred on the other party."); *id.* § 218 ("'Duress' is the condition

where one is induced by a wrongful act or threat of another to make a contract under circumstances which deprive one of the exercise of his or her free will. Freedom of will is essential to the validity of an agreement." (footnote omitted)).[5] The court finds that employees do not waive their FLSA claims, pursuant to §216(c), if their employer has affirmatively misstated material facts regarding the waiver, withheld material facts regarding the waiver, or unduly pressured the employees into signing the waiver.[6]

Here, the defendant posted a sign with a list of employees' names stating that those employees "*must* come to the Administrative Building and see Michelle regarding payment for wages as agreed upon by the Stones River center and the Department of Labor." (Docket No. 43, Ex. 1 at 72 (emphasis added).) It appears that, when the employees met with the defendant's human resources representatives, neither the representatives nor the Form WH-58 informed the employees that they could choose to not accept the payments.[7] On the evidence presented at the

---

[5] In discussing fraud and duress, both the plaintiffs and the defendant rely on Tennessee law. (Docket No. 75 at 9; Docket No. 86 at 4.) But the issue is whether there has been a valid "agreement" under § 216(c). It is not clear that the formation of an "agreement," as that term is used in a federal statute, depends on the law of any particular state.

[6] This holding does not conflict with the other cases cited by the defendant, *Heavenridge v. Ace-Tex Corp.*, No. 92-75610, 1993 U.S. Dist. LEXIS 21129 (E.D. Mich. Sept. 3, 1993), *Cuevas v. Monroe Street City Club, Inc.*, 752 F. Supp. 1405 (N.D. Ill. 1990), and *Mion v. Aftermarket Tool & Equip. Group*, 990 F. Supp. 535 (W.D. Mich. 1997).
This holding does conflict with *Solis v. Hotels.com Texas, Inc.*, No. 3:03-CV-0618-L, 2004 U.S. Dist. LEXIS 17199 (N.D. Tex. Aug. 26, 2004), in which the district court rejected the contention that "an allegation of fraud could lead to the invalidity of a waiver under 216(c)." *Id.* at *6. That finding was mere dicta, however, and, regardless, this court is not bound by decisions from the Northern District of Texas.

[7] Form WH-58 informed the employees that "acceptance of this payment of wages . . . means that you have given up the right you have to bring suit on your own behalf" and that they should not sign the receipt "unless [they] have actually received [the] payment in the amount

17

April 14 hearing and submitted thereafter, the court finds that reasonable employees could have believed that the defendant was *requiring* them to accept the payment.[8]  Obviously, this calls into question the willingness of the employees' waivers.

Additionally, it appears that the defendant never informed the employees that a collective action concerning the Meal Break Deduction Policy was already pending when the waivers were signed.  The court finds that it was the defendant's duty to do so.  Section 216 exists to give employees a choice of how to remedy alleged violations of the act – by either accepting a settlement approved by the DOL or by pursing a private claim.  An employer should not be allowed to short circuit that choice by foisting settlement payments on employees who are unaware that a collective action has already been filed.  If employees are unaware of a pending collective action, they are not "fully informed of the consequences" of their waiver, *Dent*, 502 F.3d at 1146, because waiving the right to *file* a lawsuit in the future is materially different than waiving the right to *join* a lawsuit that is already pending.  In the former situation, an employee who wishes to pursue a claim must undertake the potentially time-consuming and expensive process of finding and hiring an attorney; in the latter, all an employee must do is sign and return a Notice of Consent form.

Thus, the court finds that any employee of Stones River Center may void his or her § 216(c) waiver by showing either: (1) that he or she believed that the defendant was requiring him

_____

indicated above."  The form did not, however, state that the employee had the option of refusing to accept the payment.

[8] The defendant points out that some employees refused to accept the payment.  (Docket No. 75 at 10-12.)  This does not preclude the possibility that other employees reasonably believed that they were required to accept it.

or her to accept the settlement payment and to sign the waiver; or (2) that he or she was unaware that a collective action regarding the Meal Break Deduction Policy was already pending when he or she signed the waiver. The court will vacate its April 14, 2011 Order, to the extent that the order declared all such waivers to be automatically null and void. Instead, under the above-described circumstances, the waivers are voidable at the election of the employee.[9] Because the validity of any particular employee's waiver depends on questions of fact, the issue of validity as to each employee for whom this is an issue will be resolved at the summary judgment stage or at trial.

Next, the defendant argues that it is unfair for employees who received settlement payments to retain that money while pursuing claims in this collective action. (Docket No. 75 at 15-16.) At the April 14, 2011 hearing, the court stated that those employees may retain their settlement payments and that the potential damages they ultimately recover in this suit will be reduced by the amount of the settlement payments. Unfortunately, the DOL notice that was mailed to putative class members suggested that opt-in plaintiffs will invariably be allowed to keep their settlement payments, even if their private claims are ultimately unsuccessful. (Docket No. 66, Ex. 2 ("If you received a check you will not have to return the check or its proceeds if you join the suit . . . .").) If those employees ultimately recover no damages on their claims, the court will determine at that time the difficult issue of whether the employees are required to repay the settlement money.

Finally, the defendant requests that the court certify an interlocutory appeal regarding the

---

[9] The court presumes that any employee who has opted in to this suit has elected to void his or her waiver.

validity of the waivers.  (Docket No. 75 at 17-20.)  The court has discretion to certify an

interlocutory appeal if "(1) the order involves a controlling question of law, (2) a substantial

ground for difference of opinion exists regarding the correctness of the decision, and (3) an

immediate appeal may materially advance the ultimate termination of the litigation."  *W. Tenn.*

*Chapter of Associated Builders & Contractors, Inc. v. City of Memphis (In re City of Memphis)*,

293 F.3d 345, 350 (6th Cir. 2002); *see also* 28 U.S.C. § 1292(b).  Here, the defendant has not

shown that an appeal will materially advance the ultimate termination of this litigation, because

there are a substantial number of plaintiffs who did not sign waivers.  Those plaintiffs will

pursue their claims regardless of whether the waivers are enforceable.  Accordingly, the court

will decline to certify an interlocutory appeal.

## IV.    Motion to Permit Late-Filed Claims

The plaintiffs have also filed a Motion to Permit Late-Filed claims.  Plaintiffs' counsel

mailed the court-authorized notice of this action to putative class members on May 5, 2011.

That notice instructed potential plaintiffs who wished to opt in to the suit to return their Notice of

Consent forms by June 20, 2011.  Plaintiffs' counsel received several Notice of Consent forms

after the June 20 deadline, however.  Specifically, between June 21 and July 13, 2011, plaintiffs'

counsel filed Notice of Consent forms for five opt-in plaintiffs.

The court will allow these five opt-in plaintiffs to participate in this action.  First, these

plaintiffs missed the June 20 deadline, if at all, by only several days or a few weeks.  In fact, at

least two of the five plaintiffs signed and mailed their Notice of Consent forms before the June

20 deadline.[10]  Second, allowing these plaintiffs to join the suit serves the interest of judicial economy, because it would be needlessly duplicative to require them to file separate suits against the defendant.  Third, the defendant will not be unduly prejudiced by the inclusion of these plaintiffs, because this litigation did not substantially progress between June 20 and July 13.  The class was not conditionally certified at that time, and the parties had not yet exchanged discovery regarding opt-in plaintiffs (*see* Docket No. 118 at 3).  Fourth, the court will allow no additional late-filed opt-in forms.

Accordingly, the court will allow opt-in plaintiffs Latoya McLeod, Richard Shepherd, Christina Hall, Melody Myers, and Ricardo Wimberly to participate in this collective action. (*See* Docket Nos. 109, 110, 114, 115, and 116.)

## CONCLUSION

For the reasons discussed herein, the plaintiffs' Motion for Conditional Certification and Motion to Permit Late-Filed Claims will be granted.  The defendant's Motion to Reconsider will be granted in part and denied in part; the court's April 14, 2011 Order will be vacated to the extent that it declares the § 216(c) waivers to be void, rather than voidable at the election of the employees.

An appropriate Order will enter.

ALETA A. TRAUGER
United States District Judge

---

[10] For example, plaintiffs' counsel filed Latoya McLeod's Notice of Consent form on June 21, 2011, but McLeod's signature is dated June 16, and the envelope sent by McLeod is postmarked June 17.  (Docket No. 109, Ex. 1 at 2-3; *see also* Docket No. 110, Ex. 1 at 3 (opt-in plaintiff Richard Shepherd's envelope, postmarked June 18).)